## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7832 | **DATE** | 4/18/2002 |
| **CASE TITLE** | In Re: Hartmarx Securities Litigation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** Defendants' motion (Doc 19-1) to dismiss is denied with respect to Count I and granted with respect to Counts II and III. Defendants given to May 2, 2002 to answer the Consolidated Amended Complaint. Plaintiffs will notice a motion for class certification on the Court's motion call.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | | |
| | Notified counsel by telephone. | APR 19 2002 date docketed | |
| ✓ | Docketing to mail notices. | | 25 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| SCT | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |


IN RE: HARTMARX SECURITIES )
LITIGATION ) 01 C 7832
)

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6). For the reasons set forth below, the motion is denied in part and granted in part.

### BACKGROUND

Defendant Lincoln Company, LLC, is a limited liability company formed by a group of investors including Defendants The Tom James Company, Spencer Hays, and A. Robert Abboud (collectively referred to as "Lincoln") for the sole purpose of acquiring a company called Hartmarx. Lincoln and its investors own approximately 5% of the outstanding shares of common stock in Hartmarx. On August 13, 2001, Lincoln issued a press release that included a letter sent to Hartmarx the same day. The letter stated, in pertinent part,

> [W]e offer to acquire for $4.50 per share cash all of the Hartmarx common stock outstanding, other than the nearly 5% of Hartmarx shares that we already own. This price represents a 137% premium above Friday's Hartmarx closing price of

25

$1.90 per share, or approximately a $77 million premium to Hartmarx stockholders.

. . .

The Lincoln Company LLC, which is the investor group we have assembled, is made up of The Tom James Company and other investors, who have committed $70 million in cash equity for this transaction. In addition, we have arranged financing to cover the purchase, refinance the existing Hartmarx debt and provide for the working capital needs of the Company.

The following day, trading on Hartmarx stock was particularly heavy, with over a million shares traded and a closing value of $3.75 per share, up 81% from the previous day's closing. Also on the 14th, the board of Hartmarx requested that Lincoln provide it with certain information regarding the proposed acquisition, including a detailed description of the financing to which Lincoln had referred in the August 13th letter. On the 15th, Lincoln added to the mix another press release and letter, which again indicated that the equity and financing outlined in the August 13 letter would allow Lincoln to back up its $4.50 per share cash offer. The letter stated that the financing was subject to due diligence that would take as little as three weeks and that any negotiations could take place simultaneous with the completion of that due diligence. Other releases followed, until September 7, when Hartmarx filed suit against Lincoln and its members, alleging violation of federal securities laws. Lincoln responded with another press release, which stated

> The Lincoln Company has arranged for a $175 million senior secured asset based revolving credit facility through Bank of America. In addition, Stephens Group,

Inc. of Little Rock, Arkansas, has agreed to provide $35 million of equity and $45 million of subordinated debt. The Tom James Company and A. Robert Abboud have committed to an additional $35 million of equity.

Then, on September 25, Lincoln released the commitment letters it had received from the listed backers, which indicated that the financing agreements had not been finalized until August 31[1] for Bank of America and September 14 for the Stephens Group. Finally, on October 15, pursuant to an order by Judge Shadur in the suit filed by Hartmarx, Lincoln issued a release stating that the financing arrangements addressed in the August 13 letter were not firm commitments but only oral indications of willingness. With respect to the largest chunk of financing, from the Bank of America, the press release stated that, as of August 13, Lincoln had only been "in touch" with the potential backer.

Plaintiffs in this action are a putative class of investors who bought Hartmarx stock between August 14 and October 15. Their complaint is comprised of three counts: one predicated on violations of Rule 10b-5, another that alleges violations of Rule 14e-8, and finally a common-law fraud count. Lincoln moves to dismiss the complaint in its entirety under Fed. R. Civ. Proc. 9(b) and 12(b)(6).

---

[1] August 31 is the date of the initial commitment of $175 million from Bank of America; the sum was increased to $200 million a week later.

## LEGAL STANDARD

The purpose of a motion to dismiss pursuant to Fed. R. Civ. Proc. 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case. Triad Assoc., Inc. v. Chicago Housing Auth., 892 F.2d 583, 586 (7th Cir. 1989). Thus, defendants must achieve a high standard to have the court dismiss a plaintiff's case for failure to state a claim upon which relief can be granted. In ruling on a motion to dismiss, the court must construe the complaint's allegations in the light most favorable to the plaintiff and all well-pleaded facts and allegations in the plaintiff's complaint must be taken as true. Bontkowski v. First Nat'l Bank of Cicero, 998 F.2d 459, 461 (7th Cir. 1993). The allegations of a complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond a reasonable doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 78 S.Ct. 99 (1957).

Complaints alleging securities fraud also implicate Fed. R. Civ. Proc. 9(b), which requires that all averments of fraud be stated with particularity. In re HealthCare Compare Corp. Sec. Litigation, 75 F.3d 276, 281 (7th Cir. 1996). In addition to the heightened requirements under Rule 9(b), the Private Securities Litigation Reform Act of 1995 ("the PSLRA") mandates that a plaintiff who is required to plead a particular

state of mind must within the complaint state facts giving rise to a "strong inference" that the defendant acted with that state of mind. 15 U.S.C. § 78u-4(b)(2).

With these principles in mind, we turn to Lincoln's motion.

## DISCUSSION

### Count I

Count I alleges that Lincoln's statements within the various press releases, with the exception of the October 15 release, violated Rule 10b-5 of the Securities Exchange Commission. To properly plead a cause of action under Rule 10b-5, a plaintiff must allege that "(1) the defendant made a false statement or omission (2) of material fact (3) with scienter (4) in connection with the purchase or sale of securities (5) upon which the plaintiff justifiably relied (6) and that the false statement proximately caused the plaintiff's damages." Caremark, Inc. v. Coram Healthcare Corp., 113 F.3d 645, 648 (7th Cir. 1997). Lincoln takes issue with the sufficiency of Plaintiffs' pleadings only as to the third element: scienter.

Under the PSLRA, Plaintiffs must allege facts that give rise to a strong inference that Lincoln acted with scienter. 15 U.S.C. § 78u-4(b)(2). Scienter is "a mental state embracing the intent to deceive, manipulate or defraud." Ernst & Ernst v. Hochfelder, 96 S.Ct. 1375, 1381 n.12 (1976). Although the Court in Ernst left open the question of whether reckless behavior was sufficient to support an allegation of scienter, the

Seventh Circuit has since answered that question in the affirmative. SEC v. Jakubowski, 150 F.3d 675, 681 (7th Cir. 1998). However, the Court of Appeals has not yet established a pleading standard in the context of the PSLRA. Several courts in this district have opted to use the standard laid out by the Second Circuit, which allows a plaintiff to plead a strong inference of scienter in one of two ways: by showing that the defendants had both the motive and the opportunity to commit the alleged fraud or by establishing strong circumstantial evidence of reckless or conscious behavior. See Suez Equity Investors, LP v. Toronto-Dominion Bank, 250 F.3d 87, 100 (2nd Cir. 2001); see also, e.g., Schaps v. McCoy, 2002 WL 126523, at *3 (N.D. Ill. Jan. 31, 2002); Chu v. Sabratek Corp., 100 F. Supp. 2d 815, 822-23 (N.D. Ill. 2000) (collecting cases).

Lincoln contends that the complaint does not adequately allege motive and opportunity to defraud, because the only motive implied in the complaint deals with the inflation of the price of Hartmarx stock. Because Lincoln's members did not even attempt to sell any of their 5% interest in the corporation, an argument that they were trying to unload their shares at artificially high prices falls flat. Without a concrete benefit that would accrue to them, Lincoln could not have been motivated by the prospect of increased stock prices. Novak v. Kasaks, 216 F.3d 300, 307-08 (2nd Cir. 2000). Plaintiffs cite a different motive within their response to the motion to dismiss; they assert that Lincoln wished to increase external pressure on the Hartmarx board to

force them to come to the bargaining table. Whatever the merits of this argument may be, a strong inference of the advanced motive is not apparent from the allegations in the complaint. Plaintiffs therefore cannot establish a strong inference of scienter through the "motive and opportunity" method.

However, as stated above, the Second Circuit test is disjunctive. If Plaintiffs can establish an appropriate level of inference under the second avenue, their cause of action will survive. We therefore examine whether the complaint establishes strong circumstantial evidence of reckless or conscious behavior. Suez, 250 F.3d at 100.

As Lincoln states in their memorandum in support of the motion to dismiss, "here the inquiry is whether defendants knew that their language was likely to be interpreted as indicating that the financing was completely tied down and in place." Defs.' Mem. in Support, at 15. In addition, Lincoln acknowledged within the same press release the need for "accurate information in the marketplace." Defs.' Exh. 2. Plaintiffs allege that the August press releases contained inaccurate information about the state of the Lincoln's financing and that Lincoln issued the statements knowing full well that they did not have the financing that the releases stated was in place.

Lincoln attempts to cast the problem with the August press releases as a careless choice of words, which were of no moment because they eventually did receive the

necessary financing commitments.[2] This argument fails for several reasons. First, Lincoln cannot use the September developments to undo the untruth of the August statements. This is especially true given that, according to the complaint, the greatest amount of damage occurred on August 14, well before Lincoln obtained the lion's share of the backing they presented in the August 13 release as a *fait accompli*. Second, Lincoln used virtually the same language in its September 7 release as it did in the August 13 letter, even though it must have known that its financial situation had changed. Lincoln's assertions may have been more plausible had the releases said only that they had arranged financing, because even a small amount of financing seems to have been in place in August. However, we need not address the implications of this hypothetical situation, because the August releases went beyond that statement and instead indicated that the members of Lincoln "ha[d] arranged financing to cover the purchase, refinance the existing Hartmarx debt and provide for the working capital needs of [Hartmarx]." Defs.' Exh. 2. If the state of affairs at the time of this statement is what Plaintiffs insist it was, Lincoln grossly overstated the extent of its finances in

---

[2]Lincoln also attempts to designate the shortcoming of the release as a "failure to disclose." Of all the spins Lincoln tries to put on the situation, this one is particularly troubling; it is not as if the state of their financing was left out of the releases. The only thing that Lincoln could reasonably claim it failed to disclose in the August releases was that "have arranged" was intended to mean "might eventually, and we hope soon, be arranged."

-8-

this press release. Third, use of the past tense when describing events that have not come to pass by people who know that choice of words is extremely important, and the effect even a few words can have in a volatile environment like securities trading, denotes more than mere sloppiness. Under circumstances such as these, we think this choice of words reflects at least recklessness, making the contents of the complaint sufficient to raise a strong inference of scienter. Accordingly, Count I withstands Lincoln's challenge.

**Count II**

Count II of the complaint alleges that Lincoln's statements also violated 17 C.F.R. § 240.14e-8. That rule provides, *inter alia*, that it is a fraudulent, deceptive, or manipulative act within the meaning of 15 U.S.C. § 78n(e) for a person to publicly announce a tender offer that has not been commenced if the person 1) does not have the intention to commence the offer within a reasonable time and complete the offer; 2) intends to manipulate the market price of the stock of the subject company; or 3) does not reasonably believe that the person will have the means to complete the offer.

According to Lincoln, the complaint does not state a cause of action under Rule 14e-8 because it does not allow a strong inference that Lincoln did not believe that it would be able to commence a tender offer within a reasonable amount of time after the events in question. 15 U.S.C. § 78u-4(b)(2). In their response to the motion to dismiss,

Plaintiffs claim that the elements for Counts I and II are the same except for the transaction involved (purchase and sale of securities and tender offers, respectively). Their contention would be correct if Count II were based on Rule 14e, codified at 15 U.S.C. § 78n(e), but it is not. Rather, the complaint states only that Lincoln violated Rule 14e-8, which requires an intention not to pursue a proposed tender offer. We therefore do not opine whether the facts stated would support a cause of action under Rule 14e but focus only on the sufficiency with regard to the pleaded basis, Rule 14e-8.

Plaintiffs allege that Lincoln ran afoul of all three provisions of Rule 14e-8, but the facts they offer do not support their position. As stated above with regard to Count I, there is no indication that Lincoln acted intending to manipulate the price of Hartmarx stock. Moreover, the quick turnaround time of the financing that appears to have been in place by early September raises the inference that in mid August Lincoln believed that it would have the means to commence the offer within a reasonable time and that it would have the means to actually consummate the deal. The allegations within Count II therefore do not raise the requisite strong inference, and that portion of the complaint is accordingly dismissed.

**Count III**

Count III of the complaint alleges common-law fraud. Lincoln predicates its motion to dismiss this count on the Securities Litigation Uniform Standards Act of 1998

("SLUSA"), which provides, *inter alia*, that a private party asserting a misrepresentation of a material fact in connection with purchase or sale of a covered security cannot pursue a cause of action based on state law in any state or federal court if the underlying litigation is a "covered class action." 15 U.S.C. § 78bb(f)(1). Section 78bb(f)(5)(B) enumerates that a "covered class action" requires a class to be made up of more than 50 persons or prospective class members. There has been no class certification in this case, but Plaintiffs agree that their state law claim is preempted if a class is eventually certified and its membership exceeds 50 and Lincoln concedes that "more than fifty persons bought or sold Hartmarx stock during the putative class period," Defs.' Reply at 15, placing the number of prospective class members above 50 and making this case a "covered class action" for SLUSA purposes. Count III is consequently dismissed.

## CONCLUSION

Based on the foregoing analysis, Lincoln's motion to dismiss is denied with respect to Count I and granted with respect to Counts II and III.

_____
Charles P. Kocoras
United States District Judge

Dated:  April 18, 2002