# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7832 | **DATE** | 9/18/2002 |
| **CASE TITLE** | In Re: Hartmarx Securities Litigation | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 1/16/2003 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]  Ruling held. **ENTER MEMORANDUM OPINION:** We grant Alpart's motion (Doc 27-1) for certification of a class, but adjust the definition of the class accordance with this opinion. All fact discovery to be completed by January 16, 2003.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | SEP 1 9 2002 | |
| | Notified counsel by telephone. | | date docketed | 44 |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | 02 SEP 18 PM 12:34 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE: HARTMARX SECURITIES LITIGATION, ) 01 C 7832
)
)
)
)
)

DOCKETED
SEP 19 2002

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on a motion for class certification brought by Lead Plaintiff, Alpart Trading Company ("Alpart"). We grant Alpart's motion for class certification, but adjust the definition of the class as stated below.

## BACKGROUND

Defendant Lincoln Company, LLC, is a limited liability company formed by a group of investors including Defendants The Tom James Company, Spencer Hays, and A. Robert Abboud (collectively referred to as "Lincoln") for the sole purpose of acquiring a company called Hartmarx. Lincoln, and its investors own approximately 5% of the outstanding shares of common stock in Hartmarx. On August 13, 2001, Lincoln issued a press release that included a letter sent to Hartmarx the same day. The letter stated, in pertinent part:

> [W]e offer to acquire for $4.50 per share cash all of the Hartmarx common stock outstanding, other than the nearly 5% of Hartmarx shares that we already own. This price represents a 137% premium above Friday's Hartmarx closing price of $1.90 per share, or approximately a $77 million premium to Hartmarx stockholders . . ..
>
> The Lincoln Company LLC, which is the investor group we have assembled, is made

44

up of The Tom James Company and other investors, who have committed $70 million in cash equity for this transaction. In addition, we have arranged financing to cover the purchase, refinance the existing Hartmarx debt and provide for the working capital needs of the Company.

The following day, trading on Hartmarx stock was particularly heavy, with over a million shares traded and a closing value of $3.75 per share, up 81% from the previous day's closing. Also on the 14th, the board of Hartmarx requested that Lincoln provide it with certain information regarding the proposed acquisition, including a detailed description of the financing to which Lincoln had referred in the August 13th letter. On the 15th, Lincoln added to the mix another press release and letter, which again indicated that the equity and financing outlined in the August 13 letter would allow Lincoln to back up its $4.50 per share cash offer. The letter stated that the financing was subject to due diligence that would take as little as three weeks and that any negotiations could take place simultaneous with the completion of that due diligence. Other releases followed, until September 7, when it was announced that Hartmarx was terminating discussions with Lincoln because of Lincoln's alleged misrepresentations about its offer and failure to provide information about its purported debt and equity financing. On September 7, Hartmarx filed suit against Lincoln and its members, alleging violation of federal securities laws. Lincoln then responded on September 7 with another press release which stated:

> The Lincoln Company has arranged for a $175 million senior secured asset based revolving credit facility through Bank of America. In addition, Stephens Group, Inc. of Little Rock, Arkansas, has agreed to provide $35 million of equity and $45 million of subordinated debt. The Tom James Company and A. Robert Abboud have committed to an additional $35 million of equity. Such financing arrangements are subject to due diligence, a concern which has been exacerbated by the appalling behavior of Hartmarx's management.

The price dropped on September 7 from $3.53 to $2.60 in the largest volume traded since August 14. Then, on September 25, Lincoln released the commitment letters it had received from the listed backers, which indicated that the financing agreements had not been finalized until August 31 for Bank of America and September 14 for the Stephens Group. On October 1 Lincoln's offer to purchase all outstanding stock at $4.50 a share was formally withdrawn. Finally, on October 15, pursuant to an order by Judge Shadur in the suit filed by Hartmarx, Lincoln issued a release stating that the financing arrangements addressed in the August 13 letter were not firm commitments but only oral indications of willingness. With respect to the largest chunk of financing from the Bank of America, the press release stated that, as of August 13, Lincoln had only been "in touch" with the potential backer. The common stock price decreased steadily after September 7 up until October 15, falling below the pre-offer price on September 26.

## DISCUSSION

Alpart seeks certification of a proposed class pursuant to Federal Rule of Civil Procedure Rule 23. There are four threshold requirements for federal class actions: 1) numerosity, 2) commonality, 3) typicality, and 4) adequacy of representation. Fed. R. Civ. P. 23(a); *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). In addition, at least one of the factors of Rule 23(b) must be satisfied. Fed. R. Civ. P. 23(b); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613-14 (1997). Failure to meet the threshold requirements in Rule 23(a) and 23(b) precludes the Court from certifying the class. *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161

(1982); *Harriston*, 922 F.2d at 703; *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993).

A district court has "broad discretion" in determining whether a class should be certified. *Retired Chicago Police Ass'n*, 7 F.3d at 596. The party moving for the class certification bears the burden of establishing that the certification is appropriate. *Id.* A court may not consider the merits of a case in making a class certification determination. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). The question before the court is not whether the plaintiff has established "a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met." *Id.* Although ordinarily a court may not delve into the merits of a case in order to determine whether a class action may be maintained, the line between the class determination and the merits is not always clear and thus "some discovery may be necessary . . . ." *Retired Chicago Police Ass'n*, 7 F.3d at 598-99.

Alpart argues and Defendants do not contest that the potential plaintiffs are numerous. From August 14 to October 15, 2001 the stock traded over 5 million shares owned by numerous shareholders located throughout the United States. We therefore find that the numerosity requirement is satisfied.

I. Distinction for Post-September 7 Purchasers

Defendants argue vehemently that in evaluating the requirements for Rule 23(a), and in determining the class period, that investors purchasing stock on or before September 7 should be considered a distinct and separate group from post-September 7 purchasers. Defendants claim the

two groups are on a substantially different footing because the September 7 statements clarified the takeover status and thus subsequent investors bought with "their eyes wide open".

Defendants first argue that it is not reasonable for an investor to assume that the reference in the September 7 letter that indicated financing had been "arranged" meant that Defendants definitely had financing, particularly since the release also indicated that the financing was subject to due diligence. Also Defendants argue that it is not reasonable for an investor to assume the reference to the "proposal to provide $200 million in senior debt" included in the September 18 press release meant that there was a "commitment" to provide financing. We are not persuaded by such arguments, particularly the second, which engages in meaningless formalism focusing on a single term in the statement without addressing the substantive meaning expressed by the entire statement.

Defendants also ask this court to consider the large trading volume on September 7 and the sharp drop in the price on that day and infer that, because of the September 7 press release, the investing public was aware of or at least suspicious that the August 13 statements contained misrepresentations and investors were unloading their stock as a result. Alpart counters that after September 7 the stock price remained above the pre-offer price for approximately 19 days which indicates that immediately after September 7 the market still had some belief that the takeover would occur. We will not delve into such matters as it leads us into an analysis of the merits of this case. At what point in time a reasonable investor would no longer be swayed by the August 13 statement or what was going on in the investors' minds on and around September 7 are not within the scope of our review for this motion.

Defendants' alleged misrepresentations on August 13 began what was in effect a continuing and unchanging scheme, the effect of which was not rectified in its entirety until October 15. We

note that the alleged misrepresentations seem to have been rectified to a large extent on October 1 when Lincoln's offer to purchase all outstanding stock at $4.50 a share was formally withdrawn. Although it was possible that the takeover would still happen, it was a remote possibility. One thing that is clear is that on September 7 Defendants' statements did not entirely rectify the harm done by the alleged misrepresentations made on August 13 and it was not until October 15, pursuant to an order by Judge Shadur, that Defendants admitted that they did not have firm commitments, but only oral indications of willingness to provide financing. After the August 13 statements and the tumultuous events that cast doubt on those statements, there was a decline in the stock price which continued after September 7. Looking at the facts before us we see nothing that leaps out along the class period time line that would merit dividing up that continuous price decline.

II. Commonality

The commonality requirement of Rule 23(a)(2) is generally satisfied if the class members' grievances derive from "a common nucleus of operative fact." *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992). There is a common nucleus of operative fact where "defendants have engaged in standardized conduct towards members of the proposed class." *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). The fact that there are factual variations among class members claims does not in itself defeat the certification of a class. *Patterson v. General Motors Corp.*, 631 F.2d 476, 481 (7th Cir. 1980).

Defendants argue that there are conflicts within the class and thus there are not common issues of law and fact. First defendants argue that there is a conflict between investors that sold on September 7 and post-September 7 purchasers. According to Defendants, September 7 sellers will

want to argue that the rapid drop in price on September 7 was the result of the investing public's realization that the August 13 statements were not accurate. On the other hand, the post-September 7 purchasers will have an incentive to argue that whether or not the takeover was viable and whether Defendants had been forthcoming was still unclear on September 7 and thus it was not until October 15 when a reasonable investor would have discovered the alleged fraud.

This argument is without merit. The September 7 sellers do not necessarily have to argue that September 7 was the day that the market reacted to the discovery of the alleged fraud. On September 7 Defendants were still not entirely forthcoming regarding the takeover. It was a gradual process by which the truth was exposed, and it was not until the October 15 statement that there was complete clarification regarding the takeover. Different sellers could have become uncomfortable with the situation at different points in time. Looking at the facts before us it is conceivable that the different points at which investors sold their stock could all fall within the spectrum of what the reasonable investor would do. Thus the September 7 sellers need not argue that the August 15 misrepresentations were completely clarified on September 7. They can argue that September 7 was when they became uncomfortable with the situation and so sold their stock and still recover for their damages.

Defendants also argue that there were multiple statements and disclosures made by Defendants between August 13 and October 15. Thus, according to Defendants, depending on when class members bought and sold stock, the materiality of each of Defendants' statements and issues such as reliance and scienter would be different for many class members. Defendants argue that the differences between class members would exist particularly after September 7 as Defendants took

major steps towards rectifying the effect of the August 13 misstatements and class members' eyes were opened wider and wider.

Simply because the alleged misrepresentations of Defendants were not isolated to one instance and instead involved multiple misrepresentations over a period of time "does not make individual issues predominant." *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522, 526 (N.D. Ill. 1988). In *Harman* the court found that a series of misrepresentations over a period of time was part of a "continual unchanging scheme." *Id.* In this case beginning on August 13 there was likewise a "continual unchanging scheme" on the part of the Defendants. Although, there may be some variations between class members as to materiality of some facts, those factual variations alone do not preclude class certification. *Patterson*, 631 F.2d at 481.

In this case there are issues of fact and law that are common to the proposed class. Defendants allegedly disseminated misleading statements to the investing public in violation of Rule 10b. All class members have an interest in addressing the facts surrounding the statements and determining whether Defendants violated Rule 10b and whether they committed common law fraud. Although the size of each investor's investment in the stock may vary, they all have essentially the same claim. Their claims all arise from the same course of conduct of Defendants during the class period. The Defendants in disseminating their statements to the investing public "engaged in standardized conduct towards members of the proposed class." *Keele*, 149 F.3d at 594. Thus the claims of the class members derive from a common nucleus of operative facts and the commonality requirement of Rule 23(a) is satisfied.

III. Typicality

The issue of typicality is "closely related to" the issue of commonality. In assessing the typicality requirement of Rule 23(a)(3) the court needs to:

> focus on whether the named representatives' claims have the same essential characteristics as the claims at large. 'A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'

*Retired Chicago Police Ass'n*, 7 F.3d at 596-97 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). A plaintiff within the class may have an atypical claim if there is a "unique reliance defense" available against that plaintiff. *In re VMS Securities Litigation*, 136 F.R.D. 466, 475 (N.D. Ill. 1991).

Defendants claim that Alpart's claim is not typical because Alpart bought a large portion of their shares after September 7 and continued to purchase stock up until October 15 as the price fell. Defendants claim that Alpart knew of the alleged fraud as of September 7 and made the post-September 7 purchases with the belief that they would sue for fraud to make up for any losses. According to Defendants the main reason that Alpart delineated the class period until October 15 rather than September 7 was so that the bulk of their purchases would be included within the class. Defendants thus argue that Alpart's state of mind when buying stock after September 7 is a unique defense that can be asserted against Alpart. Defendants also claim Alpart's claim is not typical because Mr. Macklem, who headed a special trading group for Alpart, learned information from attending court proceedings and from oral assurances made to him in private discussions. Alpart responded that Macklem testified in a deposition that he didn't think that he was told anything different than what was said in the press.

In terms of the state of mind defense against Alpart, we will not address whether Alpart knew or suspected the alleged fraud as of September 7 or whether it was reasonable for them to continue to purchase after September 7. Defendants ask us to "peek at the merits" of the case but as stated above will not do so. We will not consider what Alpart's motives were for purchasing stock after September 7. In terms of the information Alpart obtained separate from other investors, looking at the conflicting facts before us we are not convinced that Alpart obtained any private information during the class period that would render their claim atypical. Alpart's claim arises from the same course of conduct as the other class members claims which was the alleged misrepresentations on August 13, and the continuation of the effect of those misstatements through additional statements, and a failure to cure them until October 15. Alpart's claim is also based on the same legal theory as the claims of other class members. The complaint alleges a violation of Rule 10b of the Securities and Exchange Act of 1934 and common law fraud.

IV. Adequate Representation

Under Rule 23(a)(4) the representative parties must adequately represent and protect the interest of the class. To make this determination there is a two-part inquiry: 1) "the adequacy of the named plaintiff's counsel," and 2) "the adequacy of the representation provided in protecting the different separate, and distinct interest of the class members." *Retired Chicago Police Assoc.*, 7 F.3d at 598 (citing *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986)). A class is not fairly and adequately represented if: 1) "class members have antagonistic or conflicting claims," *Rosario*, 963 F.2d at 1018; 2) the representative's claim is extremely weak, *Robinson*, 167 F.3d at 1155; or 3) the class representative does not have standing to sue in his own right, *Mintz v. Mathers*

*Fund, Inc.*, 463 F.2d 495, 498-99 (7th Cir. 1972). As discussed above, Alpart does not have conflicting interests with the other members of the class. Both seek to recover from Defendants for their alleged violation of federal securities law and for common law fraud. We have no reason to presume that Alpart's claim is particularly weak, and Alpart has standing to sue in its own right for the damages it incurred as a result of the alleged misrepresentations. Alpart has also indicated that the counsel handling its case has experience with class action litigation. Therefore, we find that Alpart will fairly and adequately represent the class.

V. Predominance of Common Questions and Superior Method

Under Rule 23(b)(3) the court must find that "questions of law or fact common to the class predominate over any questions affecting only individual members , and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. . . ." Fed. R. Civ. P. 23(b)(3). As discussed above there are questions of law and fact that are common to the class. Those common questions concerning whether Defendants violated Rule 10b and the facts surrounding their statements after August 13 are central to the claims of all members of the class. The factual variations in the claims do not predominate over the issues common to the class. Also, there do not appear to be any unique defenses that can be presented against Alpart that would become the central aspect of this case and predominate issues common to the class.

We are also satisfied that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. There are no facts to indicate that individual members of the class have any unique interest in pursuing this matter individually. As Alpart points out such an action may be cost prohibitive for many investors. There is no indication that any other members

of the class have commenced an action against Defendants at this point. Therefore we find that Rule 23(b)(3) is satisfied.

VI. Definition of Class

Defendants also complain of the broad language of the class definition that includes all sellers within the class period. Alpart defines the proposed class as: "All individuals or entities who purchased or sold stock in Hartmarx Corporation during the period of time commencing with the opening of trading on August 14, 2001 through and including the close of trading on October 15, 2001." First, we will limit the class period to October 1 when Lincoln's offer to purchase all outstanding stock at $4.50 a share was formally withdrawn. Although the takeover could in theory still have proceeded afterwards the possibility was sufficiently remote that the class period should be adjusted accordingly. Defendants correctly point out that some investors may have bought within the class period and sold for a higher price if they sold early on in the price decline after August 13. Those investors suffered no real damages. Also, only investors that purchased stock in the class period could have relied on the alleged misrepresentations. Thus investors that did not purchase stock prior to August 13 but sold within the class period should not be included in the class. The alleged misrepresentations on August 13 regarding the takeover meant that the stock price would likely rise in the future and thus it would be inconsistent for an investor to rely on Defendants' statements as a basis to sell. Therefore the class definition will read as follows: "All individuals or entities who purchased stock in Hartmarx Corporation during the period of time commencing with the opening of trading on August 14, 2001 through and including the close of trading on October 1,

2001, and either sold the stock at a lower price than their purchase cost or still own the stock at this time."

## CONCLUSION

Based on the foregoing analysis, we grant Alpart's motion for certification of a class, but adjust the definition of the class in accordance with this opinion.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: __September 18, 2002__