Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Charles P. Kocoras | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 7832 | **DATE** | 11/19/2003 |
| **CASE TITLE** | In Re: Hartmarx Securities Litigation | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ■ Status hearing set for 12/3/2003 at 9:30 A.M..
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Ruling held. **ENTER MEMORANDUM OPINION:** The parties' cross-motions (Docs 63-1 & 70-1) for summary judgment are denied. Alpart's motions (Docs 80-1 & 83-1) to strike portions of the declarations of Defendants Hays and Abboud are denied as moot. All other pending motions are moot.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | NOV 20 2003 date | | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 96 |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | | |
| SCT | courtroom deputy's initials | 03 NOV 20 PM 4:40 FILED FOR DOCKETING | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

IN RE:                                                    )
                                                          )
                                                          )
HARTMARX SECURITIES LITIGATION    )    01 C 7832
                                                          )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, Chief District Judge:

This matter comes before the court on cross-motions for summary judgment. For the reasons set forth below, the parties' motions are denied.

## BACKGROUND

The following summary is derived from the statements of fact filed by the parties pursuant to Local Rule 56.1. Plaintiff Alpart Trading Company ("Alpart") is a market making firm in Chicago. Between August 14 and October 8, 2001, Alpart purchased shares of stock in an apparel manufacturer called Hartmarx Corporation ("Hartmarx"). In the instant litigation, Alpart represents a certified class of similarly situated purchasers of Hartmarx stock. Defendant Lincoln Company, LLC ("Lincoln") is a limited liability company formed by a group of investors to acquire Hartmarx Corporation. Defendants Tom James Company ("Tom James"), Spencer Hays ("Hays"), and A. Robert Abboud ("Abboud") are founding members of Lincoln. Hays

is the principal shareholder of Tom James, another apparel manufacturer. Abboud is a former member of the Hartmarx board of directors.

In early 2000, Hays became interested in acquiring Hartmarx. He approached Sun Trust Bank ("Sun Trust") and Bank of America regarding a loan to fund the potential acquisition. On February 23, 2000, Sun Trust issued an engagement letter to Hays in which it proposed to arrange this financing. The engagement letter was never executed, and Sun Trust did not issue a loan to Hays in 2000. Around the same time in February 2000, Hays met with the chairman of the Hartmarx board to discuss his plans to acquire the company. While the parties do not agree on the specifics of ensuing events, suffice it to say that Hays and the board did not see eye to eye on the merits of the proposed acquisition. In April 2000, Sun Trust wrote a letter to Hays regarding the state of their discussions of financing, with the understanding that its contents could be disclosed to the Hartmarx board. There is no dispute that the letter was not a loan commitment, nor that Hays knew that it was not a loan commitment. In May 2000, the board notified Hays that it no longer had any interest in his proposal or continued discussion of it.

For the remainder of 2000 and into 2001, relations between Hays and Hartmarx steadily deteriorated. In April 2001, Abboud was not reelected to his position on the board. Two months later, Abboud formally joined Hays in his renewed effort to

acquire Hartmarx. The two formed Lincoln and began contacting potential funding sources about backing the deal. These included Sun Trust as well as equity investors, including a private fund known as the KPS Special Situation Fund ("KPS") and an entity known as the Stephens Group ("Stephens"), about backing the deal. On August 10, 2001, Sun Trust sent a letter to Hays indicating a desire to participate as well as a belief that the transaction can be performed according to specified terms. It is undisputed that the letter did not represent a formal commitment from Sun Trust to provide the money Hays had requested.

Three days later, on August 13, 2001, Lincoln sent a letter to the Hartmarx board and issued a press release regarding the acquisition. Both documents contained the following paragraph:

> The Lincoln Company LLC, which is the investor group we have assembled, is made up of The Tom James Company and other investors, who have committed $70 million in cash equity for this transaction. In addition, we have arranged financing to cover the purchase, refinance the existing Hartmarx debt and provide for the working capital needs of the company. Our offer is subject to our performing limited due diligence of Hartmarx beyond its present publicly available information, Hartmarx Board approval of our offer, including a waiver of the Company's poison pill rights plan, HSR clearance and completion of a definitive agreement.

The following day, trading of Hartmarx stock increased 81%; the closing price increased to $3.75 per share, compared to $2.07 per share the day before. That same day, Hartmarx requested, among other things, that Lincoln provide a detailed

description of the financing referenced in the August 13 press release and letter, as well as copies of all financing commitments. It is undisputed that the only written document that Lincoln had at this time was the August 10 letter from Sun Trust. On August 15, Lincoln wrote a reply letter, which stated,

> We previously provided you with evidence of our ability to complete a transaction, which you ignored ... At the appropriate time we will file all of the required filings and disclosures and will comply with all our legal obligations...We again urge the Board to meet with us, our bankers and attorneys as soon as possible to heed the direction of your shareholders ... We are committed to completing this transaction. We view our offer as in the best interests of Hartmarx, its shareholders, employees and customers. We await your call as to the time and place of a meeting.

The letter did not include a copy of the August 10 letter, nor any other information about funding for the acquisition.

On August 15, Hays requested that Sun Trust help the acquisition effort by writing a letter to Lincoln. Hays stated that "[t]he help for which we are asking does not bind your bank to anything other than ... to walk through due diligence; and, after due diligence, if you feel you want to make the loan, you will." Hays went on to indicate that Lincoln had not yet selected its equity partners, and that Lincoln had not chosen between the two banks (Sun Trust and Bank of America) who had expressed interest in providing finances. He asked that the desired letter to Lincoln state that "[i]n connection with your offer to acquire the shares of Hartmarx Corporation, this

will confirm that you have available to you $130,000,000 to cover the purchase of the shares pursuant to your offer...." Hays closed by noting that "we need to bring [the Hartmarx board] to the decision of dealing with us." It is undisputed that Sun Trust never sent the requested letter, and E. Donald Besch, a director in the Sun Trust structured finance group who oversaw Sun Trust's potential involvement as a lender in the Hartmarx acquisition, stated that a letter containing words to the effect of those in Hays' request would not have accurately reflected the state of Sun Trust's involvement at that point in time.

On August 22, Lincoln sent another letter to Hartmarx, stating that "[a]s part of the exchange of confidential information, we would certainly be able to satisfy your concerns about our ability to finance this transaction ... $70 million in cash equity is already committed." It is undisputed that Lincoln did not receive written commitments from KPS or Stephens until August 28 and September 14, respectively.

Ultimately, Lincoln decided to obtain its funding not from Sun Trust but from Bank of America, who initially expressed its willingness to fund the transaction in a letter dated September 7, 2001, and the relationship was finalized shortly thereafter. Also on September 7, Hartmarx announced that it had terminated discussions with Lincoln and filed suit for violation of federal securities laws in connection with Lincoln's representations of the financing for the proposed acquisition. Approximately

one month later, Hartmarx stockholders who had purchased shares after the August 13 press release filed a three-count complaint, alleging violations of both federal and state law. On April 18, 2002, we dismissed Counts II and III. The parties now each move for summary judgment on the remaining count.

## LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. Proc. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact ." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. Proc. 56(c)). This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." Celotex, 477 U.S. at 325. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. Proc. 56(e). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," Matsushita Elec. Indus. Co.,

Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant," Buscaglia v. United States, 25 F.3d 530, 534 (7th Cir. 1994). When reviewing the record we must draw all reasonable inferences in favor of the non-movant; however, "we are not required to draw every conceivable inference from the record–only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991).

When parties file cross-motions for summary judgment, each motion must be assessed independently, and denial of one does not necessitate the grant of the other. M. Snower & Co. v. United States, 140 F.2d 367, 369 (7th Cir. 1944). Rather, each motion evidences only that the movant believes it is entitled to judgment as a matter of law on the issues within its motion and that trial is the appropriate course of action if the court disagrees with that assessment. Miller v. LeSea Broadcasting, Inc., 87 F.3d 224, 230 (7th Cir. 1996). With these principles in mind, we turn to the parties' motions.

## DISCUSSION

Both motions revolve around Count I of the Consolidated Amended Complaint, which alleges a violation of Rule 10b-5 of the Securities and Exchange Act of 1934. 17 C.F.R. § 240.10b-5. When customized with the particulars of the instant case, the

essential elements of this claim are as follows: (1) Defendants made a false statement or omission (2) of a material fact, (3) with scienter, (4) in connection with the purchase of securities, (5) upon which the class members relied, and (6) that reliance proximately caused the class's injuries. Otto v. Variable Annuity Life Ins. Co., 134 F.3d 841, 851 (7th Cir. 1998). Alpart moves for summary judgment of liability, addressing each of the six elements; Lincoln for the converse, attacking only the sufficiency of Alpart's proof that Defendants acted with scienter. Given the Defendants' choice and the effect of a conclusion that the presence of a genuine issue of material fact as to scienter would preclude the entry of summary judgment for Alpart as well, we address our initial attention to the third element.

In the context of a 10b-5 action, scienter means that a defendant acted with intent to deceive, manipulate, or defraud. Ernst & Ernst v. Hochfelder, 425 U.S. 185, 193, 96 S. Ct. 1375, 1381 (1976). Intent can be shown by recklessness, i.e., a disregard of a danger that buyers will be misled that is obvious enough that a reasonable person would be legally charged with realizing that danger. Sundstrand Corp. v. Sun Chemical Corp., 553 F.2d 1033, 1045 (7th Cir. 1977). Scienter can be shown either through direct evidence or by indirect evidence giving rise to an inference of its presence. See, e.g., Herman & MacLean v. Huddleston, 459 U.S. 375, 390 n.30, 103 S. Ct. 683 (1982); Renovitch v. Kaufman, 905 F.2d 1040, 1046 (7th Cir. 1990). In

support of their motion, Defendants argue that Alpart has no evidence that they engaged in reckless behavior; Alpart, in arguing this portion of its motion, argues that the available evidence can only be interpreted as recklessness on the part of the Defendants.

## A. Defendants' Motion

The cornerstone of Defendants' motion for summary judgment is an assertion of the defense of good-faith reliance on the professional opinions of the attorney and public relations expert they retained in connection with their acquisition efforts. However, to establish this defense, Defendants must at minimum demonstrate that they relied on their counsel's advice that their chosen course of action was legal. See SEC v. Goldfield Deep Mines Co. of Nevada, 758 F.2d 459, 467 (9th Cir. 1985). Aside from the difficulties of establishing a party's good faith on summary judgment, it is apparent from the particulars of this case that issues of fact surround the availability of this defense. First, Isaac Neuberger, Lincoln's attorney, testified not that he rendered a legal opinion to Defendants that the words used were not misleading, but instead that the crafters of the August 13 statements gave no thought to their impact on prospective shareholders or the legal ramifications thereof. (Neuberger Dep., p. 107, ln. 5-6). Second, the oft-repeated qualifications of Mr. Abboud and Mr. Hays as thoroughly seasoned businessmen raise more than a metaphysical doubt that they blithely followed

the advice of their retained professionals. See SEC v. Steadman, 967 F.2d 636, 642 (D.C. Cir. 1992). While we do not make any ultimate decisions about the viability of these assertions, they do not require a grant of summary judgment in Defendants' favor.

Defendants also claim that the available evidence actually militates against a finding of recklessness. They contend that the sheer number of drafts of the August 13 statement (10) indicates that they took great care in drafting the language, not that they threw the letter together willy-nilly at the last minute. However, Defendants' argument ignores the substance of the revisions: such as "proposal" transforming into "offer" and "can put up" becoming "have committed." Defendants also gloss over the content of a June 21 letter written by Abboud, in which he described the state of the funding with words such as "proposal," "indicating confidence," and "may be financed." We are unpersuaded that these terms are the functional equivalent of "we have arranged financing to cover the purchase," etc. The ultimate wording of the release also starkly contrasts the much more tentative terms contained in Hays' letter to Sun Trust written two days after the initial press release. The letter clearly indicates that Lincoln had not yet chosen a financial lender, Sun Trust had not committed to anything other than performing due diligence regarding the proposed loan, and Lincoln had not yet selected its equity partners. In light of these comparisons, as well as the statement of attorney

Neuberger, we cannot agree with Defendants that no reasonable factfinder could conclude that they acted with a recklessness severe enough to be the "functional equivalent of intent." Sundstrand, 553 F.2d at 1045. Alpart has advanced sufficient evidence that the words used had the potential to mislead and that the Defendants' gave no thought to whether they would. This is enough to withstand Defendants' motion for summary judgment.

**B. Alpart's Motion**

In support of its averment that Defendants acted with scienter, Alpart points to the multiple revisions of the August 13 statements as well as the content of those revisions. Alpart also notes the extensive backgrounds of Hays and Abboud in the banking and finance industry to indicate that they would have been aware of the shades of meaning of the various versions of the draft statements. They also point out that there were no formal written commitments issued at the time the August 13 statements were released to the public. In addition, Alpart relies on the statements of attorney Neuberger discussed above.

Defendants respond that Alpart is not entitled to summary judgment on the issue of scienter because, in their view, their August 13 statement is facially accurate and correctly describes the state of their financing at the time it was issued. They contend that KPS and Stephens had agreed to provide the necessary equity, but simply had not

reduced those agreements to writing. Furthermore, they have offered evidence that the term "arranged financing" is broad enough to arguably encompass the state of their relationships with Sun Trust and Bank of America at the time the release issued. (Hays Dep. at 83-85; Abboud Dep. at 212-15; Neuberger Dep. at 65-67, 91-93). This point is not dispositive, as a statement can be literally true and yet still misleading enough to support liability. See Kas v. Caterpillar, 815 F. Supp. 1158, 1171 (C.D. Ill. 1992). Furthermore, the statements were made in the context of a document about a publicly traded stock that was intended for public release. Defendants' contentions that persons familiar with the world of finance would understand that the release might not mean that financing was in place to the extent that funds were immediately available to them are thus beside the point. Our inquiry focuses on whether there was a danger that a member of the investing public, who may not be conversant in financial jargon, would be misled by Defendants' statements. However, in light of the evidence advanced by Defendants, as well as the conclusion of the Seventh Circuit that such a construction is "at least plausible," we cannot conclude as a matter of law that the impetus of Defendants' actions was an intent to deceive the investing public. See Hartmarx Corp. v. Abboud, 326 F.3d 862, 869 (7th Cir. 2003).

Our conclusion that Alpart cannot show that there is no genuine issue of material fact as to Defendants' scienter obviates any discussion of Alpart's arguments as to the

remaining elements of the 10b-5 claim. Although their motion specifically requests that we parse out any elements of the claim for which there is no genuine issue of material fact and grant summary judgment as to those elements, such a request is both inappropriate and unavailable under the Federal Rules. See, e.g., Joslyn Mfg. Co. v. Liberty Mut. Ins. Co., 939 F. Supp. 603, 610 (N.D. Ill. 1996) (stating that "[a] party cannot obtain summary judgment on a portion of a claim."). Alpart's motion for summary judgment as to liability under Count I is denied in its entirety.

## CONCLUSION

Based on the foregoing analysis, the parties' cross-motions for summary judgment are denied. Alpart's motions to strike portions of the declarations of Defendants Hays and Abboud are denied as moot.

Charles P. Kocoras
Chief Judge
United States District Court

Dated: NOV 1 9 2003

-13-